UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVINDER PAL (A No. 245 237 740), | No.  1:26-cv-1531 DJC CKD P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| WARDEN, CALIFORNIA CITY ICE DETENTION FACILITY, | |
| Respondent. | |

Petitioner, detained by the Immigration and Customs Enforcement Agency (ICE), proceeds with an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 11.  For the reasons which follow, the court recommends that the petition be granted.

I. Facts

Petitioner, a native and citizen of India, entered the United States on or around September 16, 2023, near Tecate.  ECF No. 13-4 at 1.  Petitioner did not have authorization to enter.  Id. After brief detention, petitioner was released into the United States and ordered to appear for immigration proceedings on April 20, 2026, in San Francisco.  Id.  It appears that hearing was re-scheduled for May 7, 2026.  ECF No. 13-3.

/////

/////

1

On February 5, 2025, petitioner pled guilty to assault in King County, Washington. Petitioner was placed on probation and a sentence of 24 months in jail was imposed and suspended.   ECF No. 13-2.

On December 3, 2025, petitioner was arrested in Stockton when he appeared at an ICE office for a routine visit.  ECF No. 13-1.  According to ICE records, petitioner's "serious criminal arrest [in Washington occurring 19 months prior on May 3, 2024] that falls within the LAKEN RILEY ACT, . . . deemed [petitioner a] public safety threat and flight risk." Id. at 2.  Shortly following his arrest, petitioner was transferred to the California City ICE Detention Facility where he remains.  ECF No. 13-1.

Petitioner resides in Manteca.  Id. at 1.

II.  Standard for Habeas Relief

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

III.  Violation of Fifth Amendment

A.  Liberty Interest

Petitioner was not provided a hearing, either before or around the time of his December 3, 2025, arrest, to determine if detention was lawful.  Petitioner claims this violates his right to due process under the Fifth Amendment.  ECF No. 11 at 8-9.  Generally speaking, the Due Process Clause applies to all persons within the "geographic borders" of the United States.  Id. at 693. "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as

2

'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." Plyler v. Doe, 457 U.S. 202, 210 (1982). Due process protection applies to non-citizens who have "passed through our gates." Shaughnessy v. U.S. ex rel. Mezei, 345 U.S. 206, 212 (1953). Even in the immigration context, government detention is permissible "only 'in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Kong v. United States, 62 F.4th 608, 616 (1st Cir. 2023) (quoting Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey [ v. Brewer, 408 U.S. 471 (1972)]." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, the parolee's "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in "continued liberty." Id. at 481-84.

The regulations authorizing ICE to release a noncitizen from custody into the United States require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Similarly, a noncitizen can be paroled into the

3

United States for "urgent humanitarian reasons" only if the noncitizen presents "neither a security risk, nor a risk of absconding." 8 C.F.R. § 212.5(b). Release under these regulations "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017).

In light of all of the foregoing, the court finds that, generally speaking, petitioner's initial release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk or dangerous. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). "[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody he has a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Respondents argue that petitioner's re-arrest and detention are mandated by statute because although petitioner was physically admitted into the United States, he remains an "applicant for admission" under 8 U.S.C. § 1225(b) not entitled to due process protection.[1] For support, respondents point to DHS v. Thuraissigiam, 591 U.S. 103 (2020) in which the Supreme Court found that an alien arrested inside the United States near the border around time of his illegal entry, detained, and ordered removed was not a person present in the country and therefore was not entitled to due process protection.

While petitioner still may be an "applicant for admission" as that term is defined in 8 U.S.C. § 1225(b), he has also been allowed to "pass through our gates," Mezei, 345 U.S. at 212, and is a person within the border of the United States entitled to Due Process under Zadvydas. These facts distinguish him from Supreme Court precedent as to persons: (1) detained at or near

---

[1] Respondent does not argue that petitioner's conviction provides a basis for mandatory detention under 8 U.S.C. § 1226(c) noting that amendments made to that statute by the Laken Riley Act which may provide a basis for detention without a hearing are not applicable to petitioner. ECF No. 13 at 2, n. 2.

the border and never released into the country, i.e. Thuraissigiam;  Ekiu v. United States,  142 U.S. 651 (1892) (petitioner allowed off ship in San Francisco, but ordered detained at nearby mission) and (2) persons released into the country, but already subject to a final order of removal, i.e. Kaplan v. Tod, 267 U.S. 228 (1925) (petitioner denied admission at Ellis Island and ordered removed was released to custody of an immigrant aid society while deportation suspended during World War I).[2]

Denying petitioner due process protection because he is technically an "applicant for admission" as opposed to an "admittee" as those terms are defined in immigration law, "subordinates fact to fiction, [and] disregards the plain meaning of the Due Process Clause, which promises its protection to every person within the United States."  Rincon v. Hyde, No. 15-12633 BEM, 2025 WL 3122784, * 2 (Dist. of Mass., November 7, 2025) (internal quotation omitted). "Indeed, to apply the entry fiction doctrine to a case like Petitioner's is to set aside the plain meaning of the Fifth Amendment altogether."  Id. at * 7.

B.  Process Due

Next, the Court turns to what procedures are necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context). "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

/////

_____

[2] In Leng May Ma v. Barber, 357 U.S. 185 (1958), the Supreme Court found that a petitioner allowed entrance into the U.S. while her admission was under consideration was not entitled to certain statutory protections.  The requirements of the Due Process clause were not at issue.

First, petitioner has a paramount interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.).

"The risk of an erroneous deprivation [of liberty] is high" without any required process and, in particular, when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 1:25-cv-0197 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Id. Further, such hearings provide help to ensure ICE officers act within the boundaries of the law which is within ICE's interest.

Considering any person in the United States has a supreme interest in liberty, the likelihood of erroneous deprivation of liberty by ICE without any guardrails and that the DHS already has immigration courts in place to ensure deprivation of liberty is lawful, petitioner is entitled to a bond hearing finding that results in a legal justification for detention. Further, "[a]n essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are entitled to due process, including a pre-deprivation hearing before their

6

parole can be revoked.  Morrissey, 408 U.S. at 480-86.  "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V. v. Wofford, 1:25-cv-2381 KES SAB, 2025 WL 3083934 at *6 (E.D. Cal. Nov. 4, 2025) (collecting cases).  Nothing in the record before the court suggests there were any "urgent concerns" for detaining petitioner without a hearing and thus "a pre-deprivation hearing [was] required to satisfy due process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

IV.    Remedy

Having found that petitioner's Fifth Amendment right to due process was violated based on the lack of a hearing at or around the time of his arrest, the undersigned finds that petitioner is entitled to immediate release from custody.  A post-deprivation of liberty hearing at this juncture is not an adequate remedy as identified above and because it would condone the violation of petitioner's right to due process in the first instance.  See also E.A. T.-B v. Wamsley, No. 25-1192-KKE, 2025 WL 2402130, *5 (W.D. Wash. Aug. 19, 2025).

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The amended petition for writ of habeas corpus (ECF No. 11) be GRANTED.

2.  Respondent's motion to dismiss (ECF No. 13) be DENIED.

3.  Petitioner be released from Immigration and Customs Enforcement Service custody.

4.  Unless circumstances change to the point that petitioner's arrest without a hearing does not violate rights identified herein, respondent be ENJOINED AND RESTRAINED from re-detaining petitioner without providing petitioner notice and a pre-detention hearing before an immigration judge, at which hearing respondents shall bear the burden of demonstrating that petitioner is a danger to the community or a flight risk by clear and convincing evidence.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven (7)** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within **seven (7)** days after service of the objections.  The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 13, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
pal1531.imm.frs

8